# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

SUSAN MARTIN, SANDRA
LOY, PAULINE BUTLER, and
SANDRA ROBERTS,

     Plaintiffs,

                                   Case No. 16-12247

v.                              HON. DENISE PAGE HOOD

THE KROGER CO.,

     Defendant.

_____/

## ORDER GRANTING DEFENDANT'S
## MOTION TO DISMISS [#15]

## I.    INTRODUCTION

Plaintiffs Susan Martin, Sandra Loy, Pauline Bulter, and Sandra Roberts are former employees of Defendant, each of whom was terminated by Defendant shortly after the 2015 Memorial Day weekend. Plaintiffs filed this action on June 17, 2016, alleging that Defendant discriminated against them on the basis of their age and gender. Plaintiffs allege four counts of sex discrimination under Title VII and the Michigan Elliot-Larsen Civil Rights Act ("ELCRA"), four counts of age discrimination in violation of The Age Discrimination Act in Employment ("ADEA") and ELCRA, and four counts of wrongful discharge, in violation of Michigan law.

1

On June 8, 2017, Defendant filed a Motion for Summary Judgment [Dkt. No. 15], and the Motion has been fully briefed. The Court held a hearing on the Motion on August 30, 2017. For the reasons that follow, the Court grants the Motion in its entirety and dismisses Plaintiffs' cause of action.

## II.  BACKGROUND

As of May 28, 2015, all four Plaintiffs worked for Defendant at a Kroger store ("Store #486) in Warren, Michigan. Butler was 54 years old and had worked for Defendant for 10 years, most recently as back-up seafood manager. Martin was 63 years old and had worked for Defendant at Store #486 for 18 years, most recently as the Meat Manager (but apparently had worked for Defendant since 1976). Loy was 61 and had worked for Defendant for 25 years, most recently as a Direct Store Delivery receiver. Roberts was 72 years old and had worked for Defendant for 38 years, most recently as a Meat Clerk. All Plaintiffs were members of a collective bargaining unit represented by the United Food and Commercial Workers, Local 876 (the "Union") and covered by the terms of a collective bargaining agreement ("CBA").

For the 2015 Memorial Day weekend, Store #486 had received 10 cases of chicken tenders and 12 cases of whole chicken fryers, with each case containing 10-12 packages of chicken, all of which was marked as expiring on May 29, 2015. On May

28, 2015, Craig Carter (the Assistant Manager of Store #486), after consulting with Martin, determined that all of the remaining chicken tenders and whole fryers with a May 29, 2015 expiration date would be marked down significantly for quick sale (the "discounted chicken").  In order to prepare the discounted chicken at the reduced price, Martin and Roberts re-wrapped the packages and labeled them with the discounted price.  While they were doing so, several employees walked through the meat department, grabbed some of the discounted chicken packages, and told other employees about the discounted chicken packages.  Plaintiffs state that a cooler on the sales floor was filled with some of the discounted chicken packages, and Martin and Roberts each testified that they took marked down chicken packages out to the sales floor. Dkt. No. 19, Ex. H at 94 and Ex. K at 37. After viewing a video of the sales floor from May 28, 2015 (no video of the meat room exists), Antonio Council (Defendant's Loss Prevention Manager for the District) and Ron Vanneste (Store #486's Meat Coordinator) testified that they saw a cart containing the discounted chicken on the sales floor. Dkt. No. 19, Ex. M at 36, Ex. O at 24.  Those discounted chicken packages were located in a cooler on the sales floor near the other chicken products that had later expiration dates.  The discounted chicken packages that were not put out in the cooler on the sales floor were stored in the meat room, to be used to replenish the sales floor cooler, as necessary.

At the end of her shift on May 28, 2015, Butler took 10 packages of discounted chicken tenders from a cart in the meat room (which was not accessible for customers). Butler stated that she took the discounted chicken packages from there (a) so that co-workers would not have to do additional work by stocking the store coolers, and (b) to leave discounted packages in the cooler for Defendant's customers to purchase. Butler then went to the front of the store, punched out, and purchased the discounted chicken packages. On July 7, 2015, Butler was questioned about removing the discounted chicken packages from the meat room and purchasing them at the end of her shift on May 28, 2015. She was suspended, then terminated, by Defendant. According to a letter from Defendant dated August 21, 2015, she was terminated for a "Violation of Store Rule #28." Butler had one "significant reminder" (not defined) in her disciplinary record in the 10 years she worked for Defendant.

Loy punched out at 2:02 p.m. at the front of the store, then got a shopping cart and went into the meat room, where she had previously seen the discounted chicken packages on a meat cart. Loy took 12 discounted packages of chicken tenders and 10 discounted whole fryers from the meat cart, placed them in her shopping cart, then paid for them at the checkout. Loy stated that she took the discounted chicken packages from the meat cart in the meat room rather than the cooler on the sales floor so that customers could purchase the discounted chicken packages in the cooler.

There is no evidence that Loy had any history of disciplinary problems.

Martin punched out at 6:02 p.m. and began shopping. She picked up discounted chicken packages from the meat room rather than on the sales floor so that the discounted chicken packages would remain on the store floor for customers to purchase. Martin then purchased her groceries. She did not hear anything else about the matter until July 7, 2015, when she was questioned about removing the discounted chicken packages from the meat room and purchasing them at the end of her shift on May 28, 2015. Martin was suspended, then terminated, by Defendant. According to a letter from Defendant dated August 21, 2015, she was terminated for a "Violation of Store Rule #28." There is no indication Martin had been subject to any disciplinary action since she began working for Defendant in 1976.

At the end of her shift, Roberts grabbed three packages of discounted chicken tenders from the meat room, put them in a shopping cart she kept in the back of the store to assist her in walking, then punched out before paying for the discounted chicken tenders. On July 7, 2015, Roberts was questioned about removing the discounted chicken packages and paying for them at the end of her shift on May 28, 2015. She was suspended, then terminated, by Defendant. There is no indication Roberts had any disciplinary problems.

Defendant has an Employee Handbook ("Handbook") which is periodically

distributed to all employees. The Handbook contains various rules and procedures, including a policy on employee purchases (the "Policy"). The Policy provides that all shopping by employees is to be made "when the employee is off the clock." The Policy further states that "any violation of Employee Purchase Policy will result in discharge." Dkt. No. 15, Ex. 11 at 21. Both the Handbook and the Policy cover all Defendant's grocery stores in the state of Michigan. The Policy was included in the Handbooks that were provided to Plaintiffs. *Id.* at Ex. 1 at 27.

Plaintiffs have testified that, at all relevant times, they were aware that the Policy required employees to punch out prior to shopping at their store and that employees cannot purchase anything that is not offered to customers for the same price. Plaintiffs acknowledged that shopping without punching out is a serious Policy violation that will result in discharge. *Id.* at Ex. 1 at 116; Ex. 2 at 26; Ex. 3 at 34; Ex. 4 at 76). Plaintiffs also admitted that accumulating product in a department prior to the checkout and taking product from the back (meat) room are violations of the Policy. *Id.* at Ex. 1 at 128-29; Ex. 3 at 45-46; Ex. 4 at 55-56, 60.

Defendant represents that its decision to terminate Plaintiffs was based on the investigation it conducted after the events of May 28, 2015, an investigation that was triggered when Council received a MAX report indicating that only employees had purchased the discounted chicken packages of Store #486, whereas non-employee

customers had purchased chicken packages only at the regular price. The MAX report specifically flagged six employees: Jack Adams, Beverly Henderson, and the four Plaintiffs. Council states that he reached out to Store #486's management team to inform them of the MAX report's findings and conducted an investigation that included reviewing the store's videotapes to track down all the discounted chicken packages.

Council's investigation team concluded the initial part of the investigation and scheduled interviews with all six suspected employees. Council, Vanneste, and a union representative were present during each employee's interview. During the interviews, Council presented the evidence Defendant had gathered on each employee as of that date and interviewed each employee regarding his or her discounted chicken package purchases. Each employee was given an opportunity to write a statement regarding the incident.

As a result of the investigation, employee interviews, and Plaintiffs' written statements, Defendant issued each Plaintiff a "Constructive Advice Record" and suspended her pending advisability of discharge. After reviewing all the evidence, Stephanie Spangler-Opdyke (Defendant's Labor Relations Manager) made the decision to terminate Plaintiffs for violation of the Policy. Council was unable to conclude that Adams violated the policy, and based on his review of the videotape and

employee interviews, Council concluded that Henderson was off the clock both when Roberts gave her three discounted chicken packages and when Henderson purchased the discounted chicken packages. For those reasons, Adams and Henderson were not disciplined for violating the Policy.

Defendant contends that the Policy has been consistently enforced. *Id.* at Ex. 12 at 19, 36; Ex. 13 at 63; Ex. 14 at 43; Ex. 15 at 38-39. Vanneste, Spangler-Opdyke, and Carter testified that, to their knowledge, in every case in Michigan where Defendant's store management knew of a violation of the Policy, the employee was terminated, irrespective of the employee's work record or length of service. *Id.* at Ex. 12 at 19, 36; Ex. 14 at 43; Ex. 15 at 38-39. Since 2015, 21 employees statewide have been terminated specifically for violating this policy, including 13 employees under the age of 40 and nine male employees. *Id.* at Ex. 12 at 36; Ex. 16 at ¶5.

## III. LEGAL STANDARD

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is

"genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

## IV.   ANALYSIS

### A.   Applicable Law

Under both Title VII and ELCRA, a "plaintiff bringing a[n] . . . employment discrimination claim must present either direct evidence of discrimination, or circumstantial evidence that allows for an inference of discriminatory treatment."

*Reeder v. City of Wayne*, 177 F.Supp.3d 1059, 1079 (E.D. Mich. 2016) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003)). The same is true for an ADEA claim. *Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2009) (citing *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008).

"Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 3137 F.3d 564, 570 (6th Cir. 2003). "Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). "Circumstantial evidence . . . is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler*, 317 F.3d at 570.

In order to establish a *prima facie* case of discrimination under Title VII and ELCRA based on sex discrimination,[1] a plaintiff must establish that: (1) she was a member of a protected class (female); (2) she was subject to an adverse employment

---

[1]Claims of sex discrimination brought pursuant to ELCRA are analyzed under the same evidentiary framework as similar claims brought under Title VII. *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999). Plaintiffs' Title VII and ELCRA sex discrimination claims will be analyzed together.

decision; (3) she was qualified for the position she held; and (4) that she was replaced by someone of a different class (male), or treated differently than persons in a different class (males), such that it supports an inference of discrimination. *See, e.g., Diebel v. L & H Res., LLC*, 492 F. App'x 523, 526-27 (6th Cir. 2012); *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004).

If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action against the plaintiff. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6t h Cir. 2003); *McDonnell Douglas*, 411 U.S. 792, 805 (1973). Once the defendant offers a legitimate, non-discriminatory reason for its conduct, the burden shifts back to the plaintiff to demonstrate that the defendant's stated basis for the adverse employment action is a pretext designed to mask discrimination. *Texas Dept. Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas*, 411 U.S. at 805.

A plaintiff can establish pretext by producing evidence sufficient for a jury to reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against the plaintiff. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) ("A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct"). *See also Harris*

*v. Metro. Govt. of Nashville and Davidson Cnty., Tenn.*, 594 F.3d 476, 486 (6th Cir. 2010); *Dubey v. Stroh Brewery Co.*, 185 Mich.App. 561, 565-66 (1990). A plaintiff must show "both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.s. 502, 515 (1993); *Harris*, 594 F.3d at 486. A plaintiff cannot establish a *prima face* case of discrimination based on vague, ambiguous or isolated remarks. *Hein v. All America Plywood Co., Inc.*, 232 F.3d 482, 488 (6th Cir. 2000) (citation omitted).

With respect to the ADEA and ELCRA claims based on age discrimination,[2] a plaintiff must establish that: (1) she was a member of a protected class (over 40 years old); (2) she was subject to an adverse employment decision; (3) she was qualified for the position she held; and (4) that she was replaced by someone of a different class (under 40 years old), or treated differently than persons in a different class (under 40 years old), such that it supports an inference of discrimination. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523-28 (6th Cir. 2008); *Tuttle v. Metro. Govt. of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007). "The *McDonnell Douglas* framework can still be used to analyze ADEA claims based on circumstantial

---

[2]Claims of age discrimination brought pursuant to ELCRA are analyzed under the same evidentiary framework as similar claims brought under the ADEA. *Geiger*, 579 F.3d at 626 (citing *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 523 (6th Cir. 2007)). Plaintiffs' ADEA and ELCRA age discrimination claims will be analyzed together.

evidence," *Geiger*, 579 F.3d at 622-23, but not in cases where the ADEA claim is based on direct evidence. For ADEA claims based on direct evidence of age discrimination, the Supreme Court has enunciated "the correct standard for ADEA claims as whether the plaintiff has proven 'by a preponderance of the evidence ... that age was the "but-for" cause of the challenged employer decision,'" such that the "burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Geiger*, 579 F.3d at 621 (citing *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 2351-52 (2009)).

In this case, the first three elements are satisfied for both the sex and age discrimination claims, as each Plaintiff: (a) is a member of a protected class (as a female who is at least 40 years old); (b) was subject to an adverse action when Defendant terminated her; and (c) was qualified for the position she held, as each Plaintiff had worked for Defendant for at least 10 years without any significant disciplinary action imposed.

## B.     Prima Facie Cases

### 1.     Age Discrimination - ADEA and ELCRA

Plaintiffs contend that they were replaced by significantly younger, part-time employees. Defendant argues, and Plaintiffs provide no evidence to the contrary, that

Loy admitted that age had nothing to do with her termination. Loy answered "No" when asked "[D]o you think your age had anything to do with [your termination]?" Loy also stated "No" when asked "When you worked at Kroger[,] did you ever feel that you were discriminated against because of your age or your sex?"

Plaintiffs suggest that there is direct evidence that Roberts was terminated based on her age. At her deposition, Roberts testified that persons who may have influenced the decision to terminate her made numerous comments to her regarding her ability to work and/or when she was going to retire. According to Roberts, comments were made by:

a. Vanneste: "When are you getting out of here?"; "When are you leaving?"; "It's about time you retire"; "I'm leaving in the next couple of months, don't you think it's time for you to get on the ball and leave too?"; and "Is it time for you to leave yet?"

b. Travis (last name unknown), her supervisor: "When are you going to get out of here. You should enjoy life. Take it easy, go travel."

c. Carter: "When are you going to get out of here? Is it time for you to leave yet?"

Dkt. No. 19, Ex. K at 68-69. Plaintiffs argue those comments are indicative of age discrimination. Citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355 (6th Cir. 1998); *Sharp v. Aker Plant Servs. Group*, 726 F.3d 789, 797 (6th Cir. 2013).

Defendant counters that the alleged comments were not made by any individuals that made the decision to terminate Plaintiffs' employment, nor is there

14

any evidence the comments were made in temporal proximity to the terminations. Citing *Oliver v. Federated Mut. Ins. Co.*, 341 F. App'x 108, 109-10 (6th Cir. 2009) (statements referencing an employee's age are not direct evidence of discrimination when they are "not part of the decisional process and [are] unconnected in time and context to [the] termination"). Defendant suggests the comments were inquiries about Roberts' and Martin's retirement plans, which do not dictate a conclusion that their terminations were influenced by their age. Citing *Howley v. Fed. Express Corp.*, 173 F.Supp.3d 531, 539 (E.D. Mich. 2016).

Plaintiffs' claim of age discrimination is undermined by Defendant's determination with respect to Adams. It is undisputed that: (1) Adams was at least 60 years old and a long time employee of Defendant (according to Vanneste, Adams was 71 years old and had worked for Defendant for about 35 years, whereas Butler stated that Adams was 60 or 70 years old), (2) Adams was investigated with respect to the purchase of discounted chicken on May 28, 2015, and (3) Adams was not terminated. Plaintiff's age discrimination claim also is contradicted by the uncontested evidence that Defendant has terminated 21 other employees in Michigan for violating the Policy since 2015, 13 of whom were under 40.

As to Henderson, the only younger comparable identified by Plaintiffs, Defendant has submitted evidence (in the form of the testimony of multiple persons')

that, unlike Martin and Butler, Henderson had both punched out before getting the discounted chicken and got the chicken on the sales floor from a female employee believed to be Roberts (as opposed to getting the discounted chicken from the meat room). Dkt. No. 15, Ex. 14 at 35-37. Plaintiffs have offered no evidence to the contrary. Finally, as Defendant notes (and Plaintiffs do not challenge), the CBA prohibits Defendant from hiring an employee directly into a full-time position – so their replacements had to be part-time employees.

Other than Henderson, Plaintiffs have not offered any similarly situated employee under 40 as a comparable who would tend to show that Defendant discriminated against Plaintiffs on the basis of age. As Adams was as old as or older than the Plaintiffs (and, like Plaintiffs, had decades of experience working for Defendant), the Court finds that the simply because Plaintiffs were older employees (and had worked for Defendant for a decade or two or three), there is no genuine dispute of material fact to support a *prima facie* case of age discrimination by Defendant against Plaintiffs.

### 2. Sex Discrimination

Defendant argues, and Plaintiffs provide no evidence to the contrary, that Roberts and Loy admitted that gender had nothing to do with their termination. Loy was asked, "Do you believe that the fact that you're a woman had anything to do with

[your termination]?" and she answered, "No. I don't think so. No." Loy also responded "No" when asked: "When you worked at Kroger[,] did you ever feel that you were discriminated against because of your age or your sex?" Roberts answered "No" when she was asked, "What about your sex or your gender? Do you think that played a role in your discharge?"

Defendant argues that Martin's and Butler's sex discrimination claims rest on the theory that similarly situated males were treated more favorably than Martin and Butler were. Defendant asserts that Martin and Butler cannot show that there were any similarly situated male employees. Plaintiffs must show that, in "all relevant aspects," their employment was "nearly identical" to the employment of the allegedly similarly situated male employees. *Humenny*, 390 F.3d at 906 (citing *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 929 (6th Cir. 1999)). Allegedly similarly situated male employees "must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Tuttle*, 474 F.3d at 317.

Plaintiffs acknowledge that comparable means the persons "must have dealt with the same supervisor, have been subject to the same standards and have engaged

in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *Ercegovich*, 154 F.3d at 352 (rejecting a narrow construction of *Mitchell* when holding that the plaintiff had to establish only that the other employees were similarly situated in all relevant aspects).

Plaintiffs argue that Adams and Hudson were comparable in all ways to Plaintiffs and engaged in the same behavior that Plaintiffs did, yet those men did not suffer the same discipline and adverse action as Plaintiffs. As noted above, Plaintiffs contend that Adams bought some of the discounted chicken on May 28, 2015 in the same fashion as Plaintiffs but was not terminated. Plaintiffs argue that Hudson, a male employee, was suspended for violating the Policy but was not terminated.

Although Spangler-Opdyke, who was a store manager at that time, testified that she did not know why Hudson was not discharged, *id.* at Ex. N at 12-13, Carter testified about the events related to Hudson. Carter stated that Hudson was on the clock purchasing product at the self-checkout, in violation of the Policy, and was suspended by the assistant manager but that decision was overridden by the store manager. Defendant asserts that after Hudson was suspended for violating the Policy, he was not discharged because the Union grieved Hudson's suspension and Hudson was brought back through a negotiated settlement. Unlike the Union's decision to

grieve Hudson's suspension, the Union declined to grieve the terminations of Plaintiffs, so the avenue for mitigation of Plaintiffs' terminations was lacking. Defendant also notes that the Hudson incident occurred at a different store and under a different manager than that of Plaintiffs. Dkt. No. 15, Ex. 15 at 20. These differences demonstrate that Hudson was not similarly situated to Plaintiffs.

Defendant, as evidenced by the testimony of Council and Vanneste, agrees that Adams bought some discounted chicken on May 28, 2015. But, based on the uncontested testimony of Vanneste, Defendant argues that, unlike Martin and Butler, Adams had both punched out before getting the discounted chicken and taken the discounted chicken from the sales floor – apparently from a female employee believed to be Roberts. Dkt. No. 19, Ex. O at 21. Plaintiffs have offered no evidence to the contrary.

Defendant asserts that Martin's comments about another meat manager, whom she could not identify by name or store – or identify the basis for his termination or reinstatement – was insufficient to demonstrate a similarly situated male. Defendant also contends that Martin's comment that she "felt like [the Meat Coordinator] wanted a male meat manager" and Butler's testimony that she believed her gender played a role in her discharge ("because we were all women who were paid the most money in the store, and that's the way I believed") do not constitute evidence that they were

treated differently from similarly situated male employees. Citing *Coulter v. Deloitte Consulting LLC*, 79 F. App'x. 864, 868 (6th Cir. 2003) ("rejecting retaliation claim on the grounds that plaintiff had offered "nothing to rebut [the employer's] factual assertions and articulated reasons for her discharge other than bare denials and her subjective beliefs—both of which are insufficient basis upon which to vacate summary judgment").

Plaintiffs' claim of sex discrimination is undermined by Defendant's determination with respect to Henderson. It is undisputed that Henderson is a female employee who was investigated with respect to the purchase of discounted chicken on May 28, 2015 and that she was not terminated. Plaintiffs' sex discrimination claim also is contradicted by the uncontested evidence that Defendant has terminated 21 other employees in Michigan for violating the Policy since 2015, nine of whom were male.

The Court finds that Plaintiffs have failed to demonstrate a genuine dispute of material fact to support a *prima facie* case of sex discrimination.

**C.    Legitimate, Non-Discriminatory Reason**

Defendant asserts that it had a legitimate, non-discriminatory reason for terminating all four Plaintiffs. Defendant claims that Plaintiffs violated the Policy when they shopped on the clock and took the chicken packages from the meat room

rather than the coolers on the sales floor. Defendant maintains Plaintiffs were terminated after the investigation headed by Council (as described above), which was the same consequence Defendant has applied uniformly to employees who violate the Policy, regardless of age or gender. Plaintiffs do not dispute that Defendant has offered a legitimate, non-discriminatory reason for their terminations.

## D.    Pretext

Plaintiffs assert that Defendant's legitimate, non-discriminatory reason for their terminations is pretext. Plaintiffs first argue that Defendant offered differing reasons for their discharges. Specifically, Plaintiff's argue that each termination letter indicated that the applicable Plaintiff was being terminated for violating Rule #28, but the Handbook does not include a Rule #28. In the course of this litigation, Plaintiffs have been told they were terminated for violating the Policy. Plaintiffs contend that those two explanations are different. Defendant contends that it did not offer different explanations for Plaintiffs' discharges. Defendant states that management uniformly communicated to Plaintiffs that they were being terminated because they had violated the Policy, both during the investigation and interviews of Plaintiffs and during this litigation. Defendant claims that the letters of termination citing violation of Rule #28 were created by a third party, not management. The Court should find that the two reasons are not inconsistent, as the absence of a Rule #28 in the Handbook fails to

demonstrate that Defendant was giving Plaintiffs a reason for termination other than a violation of the Policy.

Relying on the testimony of Butler, Plaintiffs next assert that it was common practice at Store #486 for an employee to acquire product as he or she was coming off a shift, then go to the time clock at front of the store, which was not seen as "shopping on the clock." Dkt. No. 19, Ex. B at 33-34, 48-49. Likewise, Roberts testified that employees in the bakery would find reduced product and take it to their department until they went home, and that they would paid for it when they went home. Roberts further testified that security at Store #486 went to the bakery department and had the employee put product back, without disciplining the employee, and that there were many occasions where employees had marked down products at the service desk tables that employees saved to purchase after work. *Id.* at Ex. K at 57-58. According to Loy and Roberts, other than Plaintiffs, they were not aware of any those other employee terminated as a result of the Policy. *Id.* at Ex. G at 37-38 and Ex. K at 58. Defendant asserts that there is no evidence that anyone in management was aware of employees holding discounted products in their departments and then purchase the products when they clocked out. Plaintiffs have not shown that management knew or should have known that this practice was common at Store #486.

Butler claims, and Defendant acknowledges, that a male (Adams) and a younger

female (Henderson) also purchased chicken packages on May 28, 2015. As discussed above, however, Defendant conducted an investigation that yielded no basis for terminating Adams or Henderson, and Plaintiffs have offered no evidence to question the validity of Defendant's conclusions regarding Adams and Henderson.

The Court concludes that Plaintiffs can make no showing that Defendant's proffered reason had no basis in fact or was not what actually motivated the Company in terminating their employment. Martin admits that she took the discounted chicken packages from the meat wrapping room and that she "should have bought them from the counter." Dkt. No. 15, Ex. 1 at 101. Butler does not deny that she obtained the discounted chicken packages from the meat room, and that she then set them aside until her shift ended. *Id.* at Ex. 3 at 29, 47. As Defendants assert, "Plaintiffs may not simply substitute their own business judgment for that of the defendant in order to demonstrate pretext and survive summary judgment." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 550 (6th Cir. 2004).

This is a case where it appears that the consequence imposed by Defendant on career employees with excellent performance histories was severe and, perhaps, excessive and unnecessary. But, even if the "disciplinary decisions were perceived as somewhat harsh, that does not provide a legal basis for concluding that the same actions were motivated by [sex or age] animus, at least in absence of something

more." *Howley v. Fed. Express Corp.*, 173 F.Supp.3d 531, 549 (E.D. Mich. 2016) (citing *Lytle v. Malady*, 458 Mich. 153, 916 (1998) (plaintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for discrimination) (*rev'd and remanded*, No. 16-11559, 2017 WL 1019063 (6th Cir. Mar. 15, 2017); *see also Smith v. Leggett Wire Co*., 220 F.3d 752, 763 (6th Cir. 2000) (courts are not intended to allow second guessing of "management" decisions, provided that such decisions are not unlawfully motivated); *Young v. Sabbatine*, 238 F.3d 426 (Table), 2000 WL 1888672, at *6 (6th Cir. 2000) ("The Court cannot sit as a 'super-personnel department.'" (citation omitted)). As the issue for the Court is whether Defendant terminated Plaintiffs "because of an illicit motive," not whether management "exercised good judgment in firing" Plaintiffs, the Court may not impose its judgment on the terminations. *Smith*, 220 F.3d at 762. The Court concludes that Plaintiffs have not presented any evidence which suggests, much less establishes, that Defendant did not act in a manner consistent with the Policy.

## E.    Wrongful Discharge

The parties agree that, pursuant to the CBA, Defendant could only terminate Plaintiffs for "just cause." Defendant argues that it terminated Plaintiffs for just cause pursuant to the CBA and its rules. Defendant states that Plaintiffs: (i) were caught on videotape shopping while on the clock, (ii) admitted that they violated the Policy, and

(iii) acknowledged that they knew a violation of the Policy would result in termination. Defendant contends it has uniformly applied the Policy and terminated all employees for proven violations of the Policy.

Under applicable law, penalties are for the employer to decide, and will not be set aside "if the penalty is consistent with that imposed in similar cases." N. BRAND & M. BIREN, DISCIPLINE DISCHARGE ARBITRATION, 104 (2008). Defendant contends that the penalty imposed in this case was consistent with the penalty imposed "in other like cases" (where there were Policy violations). The evidence supports Defendant's contentions. Defendant's witnesses uniformly represented that, to their knowledge, in every case where store management knew of a violation of the Policy, the employee was terminated, irrespective of the employee's work record or length of service. As Defendant asserts, Plaintiffs claim that other employees violated the Policy and that Defendant did not uniformly administer or enforce the Policy, but Plaintiffs have failed to show that such violations actually occurred or that management had any knowledge of such violations.

Defendant suggests that the Union did not pursue Plaintiffs' grievances because the Union concluded it had no chance of prevailing in arbitration. Citing F. ELKOURI & E. ELKOURI, HOW ARBITRATION WORKS, 764-767, 943-968 (5th ed. 1997) (just cause includes violation of "work rules"). Although Defendant cannot speak for

the Union, individual employees do not have an absolute right to have their grievance taken to arbitration and courts must be "highly deferential" to a union's decision to not pursue a grievance to arbitration. *Crompton v. Kroger Co.*, 213 F.Supp.3d 910, 915 (E.D. Mich. 2016).

Plaintiffs offer no new argument regarding wrongful discharge, except to say they had a legitimate expectation of continued employment that was terminated after Defendant arbitrarily and capriciously enforced the Policy because of their age and gender. As the Court has declined to accept those arguments previously, the Court concludes that there is an absence of disputed material fact to support Plaintiffs' wrongful discharge claim and grant Defendant's motion with respect to the wrongful discharge claim.

## IV.    CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment [Dkt. No. 15] is **GRANTED**, and Plaintiffs' cause of action is **DISMISSED WITH**

**PREJUDICE**.  Judgment shall be entered accordingly.

IT IS ORDERED.


S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  November 30, 2017


I hereby certify that a copy of the foregoing document was served upon counsel of record on November 30, 2017, by electronic and/or ordinary mail.


S/LaShawn R. Saulsberry
Case Manager